**Louis Lujan BONILLAS, Petitioner–Appellant,**

v.

**D.R. HILL, Warden; Attorney General of the State of California, Respondents–Appellees.**

No. 96–56774.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1997.

Decided Jan. 29, 1998.

David Negus, Deputy Public Defender, Rancho Cucamonga, CA, for appellant.

Frederick R. Millar, Jr., Deputy Attorney General, San Diego, CA, for appellees.

Before: HALL, BRUNETTI, and RYMER, Circuit Judges.

Opinion by Judge Brunetti.

BRUNETTI, Circuit Judge.

On January 27, 1983, a California jury returned the following verdict: "We, the jury in the above titled action, find the defendant, Louis Lujan Bonillas, guilty of the crime of murder, as charged in the Information, as to

Count I." [1] The court admonished the jurors not to discuss the case and to refrain from reading about the case. The court then excused the jurors and directed them to call in on February 2, 1983, to receive instructions on when to reconvene for the penalty phase.

On January 28, 1983, defense counsel informed the court that the guilty verdict failed to expressly specify the degree of murder. On January 31, 1983, the court ordered the jurors to reassemble. Defense moved that, pursuant to California Penal Code § 1157,[2] the degree of murder must be fixed at second degree. The court denied the motion and instructed the jury to retire and consider the appropriate degree of murder. The court provided the jury with two verdict forms, one finding murder in the first degree and the other finding murder in the second degree. The jury then returned a verdict of first degree murder. Bonillas was subsequently sentenced to death.

■ In 1989, the California Supreme Court reversed the judgment of death, but affirmed the judgment as to guilt. Bonillas filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in district court. The district court denied the petition and Bonillas now appeals.[3]

■ We review *de novo* a district court's denial of a § 2254 habeas petition. *Dyer v. Calderon,* 113 F.3d 927, 933 (9th Cir.1997).

## I. Double Jeopardy

■ Bonillas first argues that the trial court violated the Double Jeopardy Clause by resubmitting the verdict to the jury to fix the degree of murder. Specifically, he contends that California Penal Code § 1157 dictates that he was convicted of second degree murder and effectively acquitted of first degree murder because the jury initially returned a verdict of murder without specifying a degree. Thus, he argues, the trial court violated the Double Jeopardy Clause and *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), by allowing the jury to reconsider first degree murder.

This argument fails because Bonillas was not acquitted of first degree murder under California law. The Supreme Court of California ruled that § 1157 did not apply to fix the degree of murder in Bonillas' case. *People v. Bonillas,* 48 Cal.3d 757, 779, 257 Cal. Rptr. 895, 771 P.2d 844 (1989). In *Bonillas,* the court held that the trial court was authorized to reconvene the jury to complete its verdict, stating:

> Where, as here, further proceedings are to take place, the jury has not been discharged, the jurors have been specifically instructed that they are still jurors in the case, they have been admonished not to discuss the case with anyone nor to permit anyone to discuss the case with them, and they have been directed not to read anything about the case, the jurors have not thrown off their character as jurors nor entered the outside world freed of the admonitions and obligations shielding their thought processes from outside influences. Clearly, the jury here remained within the court's control, their verdict was incomplete, and the court was authorized to reconvene the jury to complete its verdict.

*Id.* at 773, 257 Cal.Rptr. 895, 771 P.2d 844.

Bonillas argues that under California Penal Code § 1164,[4] as it read at the time of his

---

1. This verdict included the special circumstance of murder committed during the commission of, attempted commission of, or the immediate flight after committing or attempting to commit burglary.

2. § 1157 provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed the lesser degree."

3. Bonillas filed his petition on April 18, 1996. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies only to actions filed on or after April 26, 1996. *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Thus, the AEDPA does not apply to Bonillas' claims.

4. In 1983, § 1164 stated: "When the verdict given is such as the court may receive, the clerk, or if there is no clerk, the judge or justice, must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered

trial in 1983, a verdict is complete when received by the clerk, acknowledged by the jury, and recorded, if no disagreement is expressed by any juror. The California Supreme Court, however, reasonably construed its prior precedent to require that the jury also be discharged before the trial court loses its jurisdiction to reconvene the jurors. *Id.* at 770–71, 257 Cal.Rptr. 895, 771 P.2d 844.

Because the trial court was authorized to reconvene the jury to complete the verdict, the jury lawfully made an express finding of first degree murder. *Id.* at 769, 257 Cal. Rptr. 895, 771 P.2d 844. Thus, the jury did not fail to specify a degree of murder and, accordingly, § 1157 did not effectuate a conviction of second degree murder.

▮ Furthermore, under the principles of *Schiro v. Farley,* 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994), a review of the entire record does not show that the jury's silence as to the degree of murder was tantamount to an acquittal of first degree murder. First, the trial court instructed the jury that if they were to find Bonillas guilty of first degree murder, they were then to decide whether the murder was committed under a special circumstance. The jury's verdict did expressly find the special circumstance, implying that they actually found Bonillas guilty of first degree murder. Second, the verdict sheets originally provided to the jury did not specify degrees of murder. Thus, the jury was not reminded by the verdict sheets to specify a degree. Finally, counsel for the government and for the defendant both informed the jury that they did not need to find a degree of murder because felony murder was the only murder theory that was being submitted. Under *Schiro,* the record does not establish that the jury "actually and necessarily" fixed the degree of murder in Bonillas' favor. Thus, he was not acquitted of first degree murder and, accordingly, was not placed in double jeopardy.

## II. Due Process

▮ Bonillas next argues that the California Supreme Court's interpretation of California Penal Code § 1157 in *Bonillas* violated his due process rights. He contends that the court interpreted § 1157 in an "unforeseeable and unsupported" fashion in violation of a principle articulated in *Bowie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964) (stating that "an unforeseeable and unsupported state court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question").

▮ "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Thus, we cannot reconsider the substance of the California Supreme Court's interpretation of § 1157. However, we can re-examine the propriety of the interpretation in reference to whether the conviction violated Bonillas' due process rights.

Specifically, Bonillas argues that the California Supreme Court's interpretation of § 1157 in *Bonillas* strayed from precedent created in *People v. McDonald,* 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984), and cases cited therein. Upon review of the *Bonillas* opinion, we find that the court's interpretation of § 1157 was not "unforeseeable and unsupported." The *Bonillas* court carefully considered and distinguished *McDonald* and the other cases. Thus, the California Supreme Court did not act in such an erratic fashion as to deprive Bonillas of his constitutional rights.

AFFIRMED.

▮

---

upon the minutes and the jury sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."