Victor Manuel SOLIS, Petitioner–
Appellant,

v.

Rosie GARCIA, Respondent–Appellee

No. 98–56219.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1999

Filed July 12, 2000

Charles R. Khoury Jr., Wilton, New Hampshire Attorney for the petitioner-appellee

Bradley A. Weinreb, Deputy Attorney General, San Diego, California Attorney for the respondent-appellee

Before: BROWNING and TASHIMA, Circuit Judges, and JONES[1] District Judge.

PER CURIAM:

Petitioner-appellant Victor Solis was convicted by a jury in California state court of second-degree murder and was sentenced to sixteen years to life in prison. He seeks habeas relief on the grounds that the trial court judge (1) failed to instruct the jury on the elements of the predicate crime he was alleged to have committed as an aider and abettor; (2) failed to instruct the jury on lesser offenses that were supported by substantial evidence; and (3) committed errors that, cumulatively, denied him due process. The district court denied relief. We have jurisdiction under 28 U.S.C. § 2253 and we affirm.

## I. FACTS AND PRIOR PROCEEDINGS

On September 21, 1991, around 7:30 pm, petitioner Victor Solis drove his cousin, Jesus Lobato, to the Linda Vista Boys and Girls Club ("Boys Club") in San Diego, where they planned to pick up Rosalina Ramos and go cruising. When they arrived, three teenage males, Patrick Tiherina, Starr McCullough and Kenneth O'Brien (the "Linda Vista boys") recognized Solis and Lobato, who were not from Linda Vista, and challenged them to fight. Solis left without getting out of his car, but vowed to return.

Solis then drove to Mission Beach where he picked up his friend, Christopher Moffat. A witness saw Moffat stick a hand gun in his belt before getting into Solis' car. They returned to the Boys Club around 8:00 pm, looking for their adversaries, and spotted them walking up the street. When Solis drove by them, the two groups shouted challenges at each other. Solis left and returned about fifteen minutes later. As Solis drove past the Linda Vista boys, Moffat leaned out of the passenger's window and swung a baseball bat at them. The Linda Vista boys retaliated by throwing bottles at Solis' car.

About twenty-five minutes later, Solis, Moffat and Lobato drove by Tiherina, McCullough and O'Brien a third time. Unlike his first two passes, this time Solis darkened his headlights as he approached. As Solis drove up, Moffat pointed a handgun out of the passenger window and fired once, when he was about twenty-five feet from the Linda Vista boys. As their car slowly passed directly in front of the Linda Vista boys, Moffat fired twice more. Then Solis sped up and drove off. One of the bullets struck Kenneth O'Brien in the chest, killing him.

The State charged Solis with murder. The prosecutor argued either that Solis, Moffat, and Lobato were joint perpetrators of an intentional killing, or that Solis aided and abetted a planned crime which foreseeably resulted in a homicide. Solis pleaded not guilty. He testified at trial

---

1. The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

that he returned to Linda Vista to look for his friend, Rosalina Ramos. He claimed he did not know that Moffat had a gun until just before he drove to the final confrontation, and even then he believed that Moffat would only shoot the gun in the air. He further testified that when he heard shots he thought someone was shooting at his car, and that he did not know Moffat had fired until after he drove off.

Solis' attorney asked the judge to instruct the jury on the lesser included crime of voluntary manslaughter, and the lesser related charges of assault, assault with a deadly weapon and exhibiting a firearm in a vehicle. The judge refused, and instructed the jury only on first degree murder and second degree murder under the doctrine of "natural and probable consequences."[2] During deliberation the jury asked the judge for instructions on a charge not involving murder, which the judge declined to give. Ultimately, the jury found Solis guilty of second degree murder. Solis appealed, raising a number of issues, which the California Court of Appeal categorized as (1) error in the exclusion of certain evidence; (2) miscellaneous instructional error; and (3) instructional error in failing to submit to the jury instructions pertaining to the "predicate" or "target" offense giving rise to aiding and abetting liability. That court affirmed his conviction on November 22, 1993. *People v. Solis*, 20 Cal.App.4th 264, 25 Cal. Rptr.2d 184 (1993). On March 3, 1994, the California Supreme Court denied Solis' petition for review. On October 3, 1994, the United States Supreme Court denied his petition for writ of certiorari.

On December 19, 1995, Solis filed a petition for writ of habeas corpus in United States District Court, Southern District of California, alleging that the trial court's failure to instruct the jury on the predicate or target crime for purposes of aider and abettor liability, failure to instruct on lesser included and lesser related offenses, and other errors, individually and cumulatively, denied him due process. Magistrate Judge Anthony J. Battaglia prepared a Report and Recommendation, recommending denial of those claims, respectively, because: (1) the court's failure to instruct the jury on the predicate or target crime for purposes of aider and abettor liability was harmless error; (2) the trial court's failure to instruct on lesser included and lesser related offenses did not result in a due process violation; and (3) Solis did not exhaust his cumulative error claim at the state level.[3] On January 12, 1998, United States District Court Judge Irma E. Gonzalez fully adopted the Magistrate Judge's report and denied the petition. Solis timely appealed.

Solis sought a Certificate of Appealability ("COA") for all three issues he raised in the district court. The district court granted Solis a COA for a single question: whether the trial court's failure to instruct the jury on the elements of the predicate offense violated Solis' constitutional right to have a jury find upon proof beyond reasonable doubt every fact necessary for a conviction on second degree murder. Notwithstanding the district court's limited COA, Solis now asks this Court to review all three claims raised in his federal habeas petition.

## II. DISCUSSION

### A. *Scope and Standards of Review*

In conducting habeas review, federal courts are "limited to deciding

---

**2.** See CALJIC 3.02, *infra* Section II.B; *People v. Prettyman*, 14 Cal.4th 248, 58 Cal.Rptr.2d 827, 926 P.2d 1013, 1019 (1996)

**3.** The magistrate judge gave Solis the choice of (1) dismissing the action in order to exhaust all grounds raised in the petition, (2) filing a "Notice of Withdrawal of Claim" notifying the court of an intention to abandon the cumulative error claim, or (3) proceeding with the claim and facing dismissal of the petition for failure to exhaust state judicial remedies. Solis elected to file a Notice of Withdrawal of Claim, but continued to argue, in his pleadings, that the cumulative error claim was exhausted. The district court granted Solis' request to withdraw the cumulative error claim from his petition.

whether a conviction violated the Constitution, laws, or treaties of the United States." *Bonillas v. Hill*, 134 F.3d 1414, 1417 (9th Cir.1998) (internal quotations and citations omitted). This Court reviews the district court's decision to grant or deny a habeas petition de novo. *See Santamaria v. Horsley*, 133 F.3d 1242, 1244 (9th Cir.1998). The state court's factual findings are entitled to a presumption of correctness unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Bean v. Calderon*, 163 F.3d 1073, 1087 n. 3 (9th Cir.1998). The district court's factual findings in support of the denial of a Petition for Writ of Habeas Corpus must be upheld unless clearly erroneous. *Id.*

■ The Supreme Court recently decided that the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–122, 100 Stat. 1214 ("AEDPA") regarding the issuance of a COA as a predicate to review in the court of appeals apply to all cases in which the notice of appeal was filed after the AEDPA's effective date, April 24, 1996. *See Slack v. McDaniel*, — U.S. ——, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). Consistent with *Slack*, we treat petitioner's brief on uncertified issues in this appeal as a request to expand the COA issued by the district court. *See Id.* We conclude that petitioner has made the requisite "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), with respect to all issues briefed to this court. We therefore grant the expanded COA and exercise jurisdiction over these issues on appeal.

B. *Merits*

1. *Erroneous Jury Instructions*

■ Solis argues that the jury instructions given at his trial violated his constitutional right to a jury trial because they did not instruct on the elements of the target crime he was alleged to have committed as an aider and abettor. For the reasons below, his claim is denied.

The trial court gave standard instructions on liability under the natural and probable consequences doctrine, as applied to an aider and abettor of a predicate crime. *See* California Jury Instructions–Criminal ("CALJIC") 3.01, 3.02 (5th ed.1991). The aider and abettor instruction provided:

> Solis aided and abetted the brandishing of a firearm when he
>
> (1) with knowledge of the unlawful purpose of the perpetrator and
>
> (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime,
>
> (3) by act or advice aids, promotes, encourages or instigates the commission of the crime.
>
> Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.

Petitioner's Brief p. 15; *see* CALJIC 3.01 (5th ed.1991).

The natural and probable consequences instruction provided:

> One who aids and abets is not only guilty of the particular crime that to his knowledge his confederate is contemplating committing, but he is also liable for the natural and probable consequence of any criminal act that he knowingly and intelligently aided and abetted.
>
> You must determine whether the defendant is guilty of the crime originally contemplated, and if so, whether the crime charged was a natural and probable consequence of such originally contemplated crime.

Supp. ER 1 at 28, n. 4; *see* CALJIC 3.02 (5th ed.1991).

■ The instructions did not describe the elements of the target crime which Solis allegedly aided and abetted but otherwise were admittedly correct. This Circuit has recently noted that "[i]nstructions that allow a jury to convict without finding

every element of the offense violate *In re Winship*'s [397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ] requirement that 'every fact necessary to constitute the crime' must be proven beyond a reasonable doubt." *Keating v. Hood*, 191 F.3d 1053, 1061 (9th Cir.1999). In such instances, constitutional error is presumed, and the court must determine whether that error was harmless. *Id.*

■ This is not a *Winship*-type case, however, because the instructions did not omit any element of the second degree murder charge against Solis. The elements of the crime of second degree murder that Solis was charged with are (1) knowledge of a confederate's unlawful purpose; (2) intent to commit, encourage, or facilitate the commission of any target crime; (3) aid, promotion, encouragement, or instigation of the target crime; (4) commission by defendant's confederate of the charged crime; and (5) the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant encouraged or facilitated. *People v. Prettyman*, 14 Cal.4th 248, 58 Cal.Rptr.2d 827, 926 P.2d 1013, 1027 (1996). We accept, as we must, the California Supreme Court's identification of the elements of the offense. *See Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Newton v. Superior Court of California*, 803 F.2d 1051, 1058 (9th Cir.1986).

Comparing the elements of Solis' alleged crime to the instructions given at Solis' trial, it is clear that the instructions were sufficient. The instructions, taken directly from CALJIC, closely mirror each and every element of the crime of second degree murder under the doctrine of natural and probable consequences, as defined by California's highest court.

The California Supreme Court examined the exact issue before us, in *Prettyman*, and reached the same conclusion. *See Prettyman*, 58 Cal.Rptr.2d 827, 926 P.2d at 1027 (holding that CALJIC 3.01 and 3.02 which the judge also gave at Solis' trial "[do] not withdraw an element from the jury's determination or otherwise interject an impermissible presumption into the deliberative process") (internal quotation marks and citation omitted). The *Prettyman* Court disapproved of the instructions, however, because they were "ambiguous" and left open the possibility of the jury engaging in "unguided speculation." *Id.*

■ Where the jury verdict is complete, but based upon ambiguous instructions, the federal court, in a habeas petition, will not disturb the verdict unless " 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). Solis argues that he was denied due process because the instructions allowed the jury to convict him of murder without finding that he acted with the requisite intent to aid and abet the predicate crime.[4] However, the jury instructions belie that assertion. Contrary to petitioner's claim, if the jury had believed Solis' testimony, then it could not have found him guilty of aiding and abetting the target crime under the instructions given. The instructions required the jury to find, among other elements, that Solis (1) had knowledge of Moffat's unlawful purpose, (2) had intent to encourage or facilitate the commission

---

**4.** In his brief, Solis' attorney characterized the testimony Solis gave at trial as follows: Solis told the jury * * * that his cousin wishes to [return to Linda Vista to] continue looking for the girl. Solis agrees, not knowing that Moffat has a gun. (RT 439.) On the way back, Solis learns Moffat has a gun and his cousin ̇tells Solis they were going to "frighten them." Solis says "no" but his cousin says they will only fire in the air to scare them. (RT 442–443). Solis does not agree to this (RT 468) but returns anyway looking for the girl and the shooting by Moffat occurs.

Petitioner's Brief at 15.

of the crime, and (3) aided, promoted or encouraged (by act or advice) the commission of the crime. Therefore, the guilty verdict unambiguously indicates that the jury concluded Solis intended to encourage or facilitate the commission of the target crime.

 The verdict is ambiguous only to the extent that it does not reveal which target crime the jury found Solis guilty of aiding and abetting. However, California law does not require that jurors unanimously agree upon the basis for defendant's guilt, when alternate legally valid theories exist, in reaching a unanimous guilty verdict. *People v. Davis*, 8 Cal. App.4th 28, 33, 10 Cal.Rptr.2d 381 (Cal.Ct. App.1992); *cf. Schad v. Arizona*, 501 U.S. 624, 631, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality holding that conviction under different theories does not violate due process). Solis does not argue otherwise.

Even without knowing the jury's basis for finding an underlying crime, there is no reasonable doubt whether Moffat's conduct was criminal.[5] There is simply no evidence that Solis aided and abetted any noncriminal behavior which led, as a natural and probable consequence, to Moffat's murder of O'Brien. *See Prettyman*, 58 Cal.Rptr.2d 827, 926 P.2d at 1028. Because there is no reasonable likelihood that the jury applied the instructions in a way that violated the Constitution, we deny Solis' first claim.

### 2. *Lesser Included and Related Charges*

Petitioner next argues that the trial court's refusal to instruct the jury on lesser and related charges denied him due process. For the reasons below, this claim is also denied.

In 1980, the Supreme Court held that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in certain instances. *Beck v. Alabama*, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The Supreme Court explained that when a jury is given only two options, "not guilty" and "guilty of capital murder," even though the evidence would support an instruction on a lesser included offense, the risk that the jury will convict although it has reasonable doubt is too great and a third option, namely a lesser included, noncapital offense instruction, is required. *Id.* In a footnote, the Court expressly reserved judgment on "whether the Due Process Clause would require the giving of such instructions in a non-capital case." *Id.* at 638 n. 7.[6]

In the years following *Beck*, the Circuits split on the question of whether the holding in *Beck*, that due process requires lesser included offense instructions in certain instances for capital defendants, applied to non-capital cases as well. The Third and Sixth Circuits extended the *Beck* rule generally to non-capital cases. *See, e.g., Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir.1988); *Ferrazza v. Mintzes*, 735 F.2d 967, 968 (6th Cir.1984). The Fifth, Tenth and Eleventh Circuits found no constitutional right in non-capital cases. *See, e.g., Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988); *Trujillo v. Sullivan*, 815 F.2d 597, 602 (10th Cir. 1987); *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir.1987). Other Circuits will entertain a habeas petition on that ground only to prevent fundamental injustice. *See,*

---

5. The judge, in response to a juror's question during deliberation, sent a note stating that firing a gun in a city area is a crime, thereby explaining one possible target crime. Other possible crimes suggested by the evidence were brandishing, assault, assault with a deadly weapon and exhibiting a firearm in a vehicle.

6. For two analyses on whether *Beck* should apply in non-capital cases, compare Michael G. Pattillo, Note, *When "Lesser" is More: The Case for Reviving the Constitutional Right To A Lesser Included Offense*, 77 Tex. L.Rev. 429 (1998) with James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine And The Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 Marq. L.Rev. 1 (1995).

*e.g., Tata v. Carver,* 917 F.2d 670, 672 (1st Cir.1990); *Nichols v. Gagnon,* 710 F.2d 1267, 1272 (7th Cir.1983).

In 1984, this Court had the opportunity to extend the holding in *Beck* to non-capital cases, but declined to do so. In *Bashor v. Risley,* 730 F.2d 1228 (9th Cir. 1984), the Ninth Circuit, without reference to *Beck,* held that "the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." 730 F.2d at 1240 (quoting *James v. Reese,* 546 F.2d 325, 327 (9th Cir.1976)). The *Bashor* court noted, however, that the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule. 730 F.2d at 1240; *cf. Windham v. Merkle,* 163 F.3d 1092, 1106 (9th Cir.1998)(mentioning no exception to the general rule).

In 1989, the Supreme Court issued its opinion in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which, in effect, prevented this court from modifying our holding, in *Bashor,* in subsequent habeas corpus cases. In *Teague,* the Court announced a new rule that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated." *Id.* at 316, 109 S.Ct. 1060. We subsequently held that *Teague* barred this Court from changing the law regarding failure to instruct errors in the context of a habeas petition. *Turner v. Marshall,* 63 F.3d 807, 819 (9th Cir.1995), *overruled on other grounds by Tolbert v. Page,* 182 F.3d 677 (9th Cir. 1999). Consequently, we adhere to the

law as stated in *Bashor* and its predecessors.[7]

While *Bashor* stated that the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim, there was no constitutional error in this case. The California Court of Appeal found no error in the trial court's refusal to instruct on voluntary and involuntary manslaughter because there was not substantial evidence to support either charge, and we agree.

Voluntary manslaughter is an unlawful killing done without malice, in the heat of passion, or in unreasonable belief in the necessity of self-defense. The California Court of Appeal affirmed the trial court's ruling that Solis' repeated attempts to reinitiate conflict with the Linda Vista boys precluded a heat of passion or imperfect self-defense instruction. The record showed that Solis and Lobato were involved in the initial altercation around 7:30 pm. Solis drove to Mission Beach to enlist Moffat's help and returned at 8:00 pm to look for the Linda Vista boys. Challenges were exchanged, and Solis drove off again. At 8:15 pm, Solis, Lobato and Moffat returned; Moffat leaned out of the car and assaulted the Linda Vista boys with a baseball bat. The Linda Vista boys threw bottles at Solis' car. At 8:40 pm, during Solis' third pass by the Linda Vista boys, Moffat brandished a pistol and fired three times, killing Kenneth O'Brien. On these facts we could not say that the district court's ruling that the record did not support a charge of voluntary manslaughter was clearly erroneous. The same can be said of the charge of involuntary manslaughter.

Involuntary manslaughter is the killing without malice, in the commission of an unlawful act not amounting to a

---

**7.** Our statement, in *Windham v. Merkle,* 163 F.3d 1092, 1106, that "Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question," was a restatement of the general rule of *Bashor,* 730 F.2d at 1240, and did not announce a new rule of law.

felony. Solis testified that, with knowledge of Moffat's intent to brandish a gun, he drove past the Linda Vista boys a third time, with headlights turned off, and that Moffat fired at the victims from his car. The district court agreed with the Court of Appeal that the evidence implied malice, thereby precluding an involuntary manslaughter instruction, and we agree.[8] Accordingly, Solis' claim must be denied.

### 3. Cumulative Error

 Solis' cumulative error claim is not cognizable because he withdrew it from his habeas corpus petition after the district court properly found that he did not exhaust his state court appeals on that issue before filing that petition in federal court. To properly exhaust a claim, petitioner must give the state supreme court a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(quoting *Picard v. Connor,* 404 U.S. 270, 276–277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). A state prisoner must "have fairly presented to state courts the substance of his [or her] federal habeas claim." *Id.* (internal quotation marks and citations omitted).

Solis' petition to the California Supreme Court argued only two issues: (1) the court's failure to instruct on the elements of the predicate crime; and (2) the court's refusal to instruct the jury on lesser charges. In the penultimate paragraph of his twenty-one page brief, petitioner wrote:

> If review is granted, appellant wishes to brief the issues raised below and asserted here, 1) that important admissible and trustworthy defense evidence was kept from the jury which evidence also showed that 2) a consciousness of guilt instruction based on hiding of the gun should never have been given; 3) A valid defense instruction pinpointing appellant's theory of the case was refused; 4) A defective reasonable doubt instruction,

CALJIC 2.90, was used and that issue is presently before the Supreme Court of the United States in *Sandoval v. California,* (1993) 509 U.S. 954, [114 S.Ct. 40], 125 L.Ed.2d 788 [789]; 5) *Finally, the errors complained of above, individually and cumulatively denied appellant Due Process and a fair trial under federal and state constitutions.*

ER 6 at 95 (emphasis added).

The district court found that the language, above, did not fairly present to the California Supreme Court the substance of Solis' federal habeas claims, and we agree. Solis' petition did not label his cumulative error claim as an "issue" in the contents section of his brief, nor did he argue the claim or cite authority for it. Because Solis cited no authority and made no argument, the government reasonably did not address Solis' cumulative error claim in its brief either, leaving the California Supreme Court with no argument on the issue from either side. We hold that the district court properly declined to review Solis' cumulative error claim, which petitioner elected to withdraw in order to proceed with his exhausted claims.

AFFIRMED.

---

8. Solis did not request an instruction on in- voluntary manslaughter at trial.